MITCHELL v. DAY.

4-4597

Opinion delivered April 12, 1937.

W. E. Beloate, Sr., and W. P. Smith, for appellant.

W. J. Schoonover and Trieber & Pope, for appellee.

BUTLER, J. Earl Day, plaintiff in the court below, brought suit to recover judgment against the defendant, Mrs. Naomi Surridge Mitchell for the sum of $983.63 and for foreclosure of the mortgage given to secure the indebtedness on certain lands situated in Randolph county. Defendant answered, denying the alleged indebtedness, and, answering further, alleged a certain contract between herself and plaintiff by which he was to lend her the sum of $2,000; that she tendered to the plaintiff her note for that amount and a mortgage securing same, together with a deed to a tract of land, known as the Munday farm, which had been executed in consideration of the expected loan of $2,000; that plaintiff kept the note and mortgage and declined the deed, and refused to carry out his contract as agreed and abandoned and repudiated the same. She further defended on the ground that the contract was usurious in that as a bonus for the loan, in excess of 8 per cent. interest, she conveyed to plaintiff the Munday farm, containing 400 acres of land. She prayed that the mortgage and notes be canceled and set aside. The chancery court found in favor of the plaintiff, awarded judgment for the sum sued for, and decreed a foreclosure of the mortgage.

We think the decree not against the preponderance of the evidence which tended to establish the following facts: Mrs. Fannie Mitchell was the mother and agent of Mrs. Naomi Surridge Mitchell. The lands involved in this litigation—and perhaps others—had become delinquent for unpaid general taxes and local improvement assessments. In conversation with plaintiff, defendant told him that she had to have some money to pay her taxes and did not know where to get it, and said that it would amount to about $2,000. Plaintiff offered to secure the money for her, if he could. Later on he was contacted by Oscar Prince, a tenant, who had been residing on the lands for a number of years during which time he had dealt with Mrs. Fannie Mitchell, defendant's mother, as his landlord. Prince advised the plaintiff that the time for redemption would soon terminate and the lands would be conveyed to the state. He asked plaintiff to go with him to see Mrs. Fannie Mitchell about it. Accordingly, they went to see her and there, according to her statement, plaintiff said, "We will go over there (meaning Pocahontas, the county seat) and get these taxes fixed up, and then, if Naomi will give me a mortgage on this land and deed me the Munday farm, I will lend her the money." Immediately following this conversation, plaintiff, accompanied by Mrs. Fannie Mitchell and Prince, went to Pocahontas where the amount of the general tax delinquent was ascertained to be $983.63. This amount plaintiff paid, obtaining certificate of redemption which he then and there delivered to Mrs. Fannie Mitchell.

Relative to the Munday farm, it appears that the land was of doubtful value, that quite a sum was due thereon for delinquent taxes that Mrs. Mitchell intended to abandon it and offered to deed it to plaintiff. Shortly after this, plaintiff went to Little Rock, the home of defendant, where a note for $2,000 and mortgage securing it were executed. During the course of the preparation of the note and mortgage, however, plaintiff was informed by his attorney that the deed which had been recently executed by Mrs. Fannie Mitchell to defendant conveyed only an estate for the life of Mrs. Fannie Mitchell and that defendant's only other title to the land was a re-

mainder contingent upon her surviving her mother. It was then agreed that in addition to the mortgage defendant would procure a policy of insurance in the sum of $2,000 and assign the same to the plaintiff. This policy was obtained, but was never assigned to plaintiff, doubtless for the following reason: When plaintiff left Little Rock, Prince took charge of the note and mortgage and delivered them to Mrs. Fannie Mitchell, to keep until the balance of the $2,000 was procured and paid over. When plaintiff returned to Mrs. Mitchell's on the following morning to complete the transaction, he was informed, and upon investigation found it to be true, that large personal judgments had been rendered against Mrs. Fannie Mitchell and that a suit was pending to set aside the conveyance from Mrs. Fannie Mitchell to her daughter, Naomi, as in fraud of creditors. Plaintiff then endeavored to secure a return of the money he had already paid out and applied to the clerk for that purpose, who informed him that a refund perhaps might be secured if the certificates of redemption were surrendered. Plaintiff went to Mrs. Fannie Mitchell and requested the redemption certificates which she refused to deliver. He then requested a delivery of the note and mortgage and at the time returned the deed to the Munday farm, stating that it wasn't worth anything and he didn't want it. Finally, Mrs. Mitchell, on the advice of her attorney, delivered the note and mortgage to plaintiff who had the mortgage recorded. The date on which the note and mortgage were given was the 14th day of June, 1932. About two years later the suits to cancel defendant's deed given her by her mother were disposed of favorably to her and an attorney, acting for plaintiff, on June 28, 1934, advised defendant of the termination of litigation and that plaintiff was then ready to complete the contract as agreed upon in 1932. Defendant answered, for several reasons declining to complete the contract, and advising that the only money or property that would ever be gotten out of her was when the courts so adjudged. This suit followed.

It is contended by defendant, on appeal, that plaintiff should be required to carry out the contract as made

before he can be in a position to ask anything against the defendant. The fact is overlooked that as soon as the suit seeking to cancel defendant's deed was terminated favorably to her, plaintiff offered to carry out his contract and this offer was declined.

Defendant further contends that the proof in this case has made out an usurious contract under the statute and decisions of this court. This contention is not tenable as the contract was never consummated and plaintiff is not seeking to recover under it, but only for the money furnished defendant at her need secured by the mortgage which was voluntarily delivered to plaintiff after the contract as first contemplated was abandoned.

The decree will, therefore, be affirmed.